**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MOHI'DEAN D. AL'ZAIEM,

    Plaintiff,

       v.

                      Civil Action No. 22-3804 (JEB)

ALEJANDRO N. MAYORKAS,

    Defendant.

<u>**MEMORANDUM OPINION**</u>

Plaintiff Mohi'Dean Al'Zaiem brings this action against Department of Homeland Security Secretary Alejandro Mayorkas for discrimination under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the Rehabilitation Act. He alleges that his supervisors subjected him to a hostile work environment and ultimately terminated him because of his race, color, national origin, religion, age, disability, and in retaliation for his prior protected activity. He also maintains that he was denied reasonable accommodations for multiple medical conditions on multiple occasions. Defendant now cites two principal grounds in seeking dismissal or summary judgment: a contract between the parties that included a release of certain claims acts as a partial bar, and Al'Zaiem failed to exhaust administrative remedies for a smattering of his claims. The Court delivers a split verdict here, agreeing with DHS in part but not entirely.

I.    **Background**

As the present Motion does not concern the particulars of the alleged discrimination, the Court recounts those facts only as necessary. For that task, it relies on the facts as pled in the Amended Complaint, assuming them to be true. See Sparrow v. United Air Lines, Inc., 216 F.3d

1111, 1113 (D.C. Cir. 2000).  It also considers the additional facts set forth in the undisputed

documents incorporated in the Complaint and attached to the Motion that are integral to the

claim, as well as matters of which it may take judicial notice, without converting this into a

motion for summary judgment.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621,

624 (D.C. Cir. 1997); Pernice v. Bovim, No. 15-541, 2015 WL 5063378, at *3 (D.D.C. Aug. 26,

2015) (explaining courts may consider documents attached by defendant to motion to dismiss "if

they are integral to its claim, they are referred to in the complaint, and their authenticity is

undisputed").

On April 16, 2017, Al'Zaiem began his tenure with the United States Citizenship and

Immigration Services as an Immigration Services Officer in the Overland Park, Kansas, National

Benefits Center.  See ECF No. 14 (Amended Complaint), ¶¶ 23, 38.  He transferred to the

Potomac Service Center (PSC) on April 1, 2018, where he reports his troubles began.  Id., ¶ 27.

He was assured before the transfer that he had completed his probationary period at USCIS and

would not have to meet any new-employee requirements for a second time at the PSC.  Id., ¶ 38.

When he arrived, however, the story had changed — despite his year of experience, he still had

to submit a new application for flexible work arrangements and receive new employee training,

and he was not eligible to receive overtime.  Id.  Al'Zaiem's new supervisors at the PSC

allegedly began harassing him by "falsely accus[ing] [him] of being late" and "subject[ing] [him]

to increased scrutiny."  Id., ¶ 24.  They also denied him training opportunities and "belittled,

demeaned, and spoke[] to [him] slowly like he was stupid or could not understand English."  Id.,

¶¶ 39–40.  Plaintiff alleges that this pattern of harassment culminated in his placement on "an

undeserved performance improvement plan" (PIP) on April 4, 2019.  Id., ¶ 42.  By June 11,

2019, Al'Zaiem learned that he had failed the PIP.  Id., ¶¶ 46.  USCIS proposed his removal on

July 30 of that year and issued a notice of decision to remove on November 22, 2019.  Id., ¶¶ 49,
53.

    Rather than effectuate its decision right away, however, USCIS offered Al'Zaiem the
option to enter into an Abeyance Agreement, a type of employment contract sometimes referred
to as a last-chance agreement.  Id., ¶ 53.  Under its terms, USCIS would postpone Al'Zaiem's
removal for some time in exchange for his acceptance of a demotion, his acknowledgement that
his performance had been inadequate, and his agreement that "any further unacceptable
performance or misconduct, as . . . determined by the Agency in its sole and exclusive
discretion" would result in his removal.  See ECF No. 19-2 (Abeyance Agreement) at 1–2.

    The Agreement also included two explicit waivers: one of "any and all appeal and other
review rights over [Al'Zaiem's] voluntary reassignment/demotion," id. at 1, and another of "his
right to appeal the removal [following further unacceptable performance] in any forum,
including but not limited to grievance, arbitration, administrative, and judicial."  Id. at 2.
Plaintiff signed the Agreement on November 22, 2019, buying himself a few months' reprieve.
Id. at 5.  But the Agreement reared its head on June 25, 2020, when USCIS notified Al'Zaiem
that he had breached its terms — by disregarding a supervisor's instructions and going "AWOL"
during the workday — and carried out his removal.  See Am. Compl., ¶ 55.

    The scrutiny at and removal from the PSC are only half of what Al'Zaiem believes made
his time there so difficult.  His employment was also marked by a series of denied disability-
accommodation requests.  Plaintiff suffers from, as relevant here, chronic pain in his right thumb.
Id., ¶ 25.  He was also diagnosed in late 2018 and early 2019 with ADD and ADHD.  Id.
Al'Zaiem reports that he sought accommodations for these conditions "[b]eginning in June 2018
through his removal."  Id., ¶ 28.  Specifically, he requested "varied work assignments . . . from

computer to paper form to limit the pain in [his] hand, permission to regularly take breaks of 15-

20 minutes every 2 or 3 hours [and] not sit for prolong[ed] periods of time as well as

modification of his duties . . . [to] lessen computer form work on one end but task him with more

complex cases that would keep his attention." Id.  His entreaties were met with just one modest

response — an ergonomic computer mouse for his hand pain, which did not meaningfully

alleviate his discomfort.  Id., ¶¶ 29–30.  Al'Zaiem also requested accommodations when he

sustained an arm injury in May 2020 that made it difficult for him to use a computer.  See ECF

No. 19-3 (Motion to Amend) at 4–5.  That request was similarly denied.  Id.

   In late 2018, Plaintiff participated in an EEO mediation related to problems between him

and his immediate supervisor, but he never filed a formal EEO complaint about those concerns.

See Am. Compl., ¶ 8.  He filed a formal complaint only much later, on September 29, 2019,

alleging discrimination and harassment beginning in May 2018.  Id., ¶ 10.  The agency accepted

investigation of all claims except those he had previously raised but never filed a complaint

about.  See ECF No. 19-1 (Report of Investigation) at 3–4.  Al'Zaiem then requested a hearing

before the EEOC on his claims.  See Am. Compl., ¶ 12.  He moved to amend his EEOC

complaint multiple times, first on December 31, 2020, but the EEOC did not allow amendment.

Id., ¶¶ 13–14; Motion to Amend; ECF No. 19-5 (EEOC Case Management Order) at 1–2.  The

EEOC ultimately dismissed Al'Zaiem's claims, the agency adopted that decision as its final

order, and the Office of Federal Operations affirmed that final order upon Al'Zaiem's appeal.

See Am. Compl., ¶¶ 15–18.  Al'Zaiem next filed a *pro se* Complaint in this Court on December

27, 2022.  See ECF No. 1 (Complaint).  Following Defendant's first Motion to Dismiss, Plaintiff,

now represented by counsel, amended the Complaint.  The operative Amended Complaint

alleges Title VII, ADEA, and Rehabilitation Act claims against Mayorkas in his official capacity.

See Am. Compl., ¶¶ 4–5.  Defendant now moves to dismiss or in the alternative for summary

judgment, raising the same arguments as to both.

## II.    Legal Standard

As the Court considers only the Motion to Dismiss, it sets out that standard alone.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a

complaint fails to "state a claim upon which relief can be granted."  Although "detailed factual

allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(internal quotations marks and citation omitted).  In weighing a motion to dismiss, a court "may

consider only the facts alleged in the complaint, any documents either attached to or incorporated

in the complaint[,] and matters of which [the court] may take judicial notice."  St. Francis Xavier

Parochial School, 117 F.3d at 624.  The court "must treat the complaint's factual allegations as

true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts

alleged.'"  Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C.

Cir. 1979)) (internal citations omitted).  It need not accept as true, however, "a legal conclusion

couched as a factual allegation" or an inference unsupported by the facts set forth in the

complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478

U.S. 265, 286 (1986)).

Rule 12(b)(1), conversely, permits dismissal of a complaint for lack of subject-matter

jurisdiction.  In general, courts must first address jurisdictional arguments before turning to the

merits.  See Sinochem Int'l Co. v. Malaysia Int'l Shipping Co., 549 U.S. 422, 430–31 (2007).  A

plaintiff bears the burden of proving that a court has subject-matter jurisdiction to hear her

claims.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S.

Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  A court has an "affirmative obligation to

ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of the

Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason,

"'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a

12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13–14

(quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed.

1987)).

## III.    Analysis

Defendant initially maintains that the Court need not concern itself with the substance of

Plaintiff's suit given that the parties' Abeyance Agreement precludes the full array of claims.

See ECF No. 16 (Motion to Dismiss) at 10.  The Court first explains why the Agreement bears

some of that heavy load, but certainly not all of it.  The Court then turns to DHS's alternative

contention that Al'Zaiem has not exhausted his administrative remedies.

### A.    The Abeyance Agreement

The parties do not dispute the validity of the Abeyance Agreement so much as its scope.

The Court will accordingly not linger on the former question.  It is worth a minor digression to

note, however, that while courts once questioned last-chance agreements as contrary to public

policy (a position Plaintiff does not take here), see, e.g., Callicotte v. Carlucci, 698 F. Supp. 944,

946–47 (D.D.C 1988) ("Allowing the filing of charges to be obstructed by enforcing a waiver of

the right to file a charge could impede EEOC enforcement of the civil rights laws.") (quoting

EEOC v. Cosmair Inc., 821 F.2d 1085, 1090 (5th Cir. 1987)), such concerns have not stood the

test of time.  See Snowden v. Zinke, 506 F. Supp. 3d 18, 31 (D.D.C. 2020) (collecting cases for

proposition that employees may validly waive Title VII claims by contract). In <u>Snowden</u>, then-Judge Ketanji Brown Jackson explained that even if <u>Callicotte</u>'s general holding were valid, that case involved distinct public interests not implicated by the typical last-chance agreement. <u>Callicotte</u> concerned the plaintiff's right to file an EEO complaint rather than the right to pursue claims in federal court (as Plaintiff here seeks), and there were serious questions about the voluntariness of the plaintiff's waiver. <u>Id.</u> at 31 n.8; <u>see also</u> <u>Callicotte</u>, 698 F. Supp. at 947 & n.2. Similar distinctions would render <u>Callicotte</u> of little force here, even if Plaintiff had made a public-policy argument.

The truly contested issue is <u>to what extent</u> the Abeyance Agreement effected a waiver of Al'Zaiem's employment claims. Plaintiff allows that he knowingly agreed to an unambiguous waiver of his <u>demotion</u> claims by signing the Agreement. <u>See</u> ECF No. Opp. 19 (Opposition) at 9. But he does not read the Agreement to unambiguously prevent him from raising claims concerning his removal, the hostile work environment, and the failure to accommodate. <u>Id.</u> at 9–10. The Agency, conversely, takes the hard-line view that the Agreement sweeps broadly enough to halt all of Al'Zaiem's employment-related claims at the Court's front door. <u>See</u> MTD at 10. The Court finds neither interpretation wholly persuasive.

1. *Removal*

"A contract's waiver of a party's appeal rights is enforceable if the waiver's terms are unambiguous . . . and if the party that relinquished its appeal rights did so knowingly and voluntarily." <u>Snowden</u>, 506 F. Supp. 3d at 30 (internal citations omitted). Al'Zaiem raises no serious argument that he entered into the Agreement involuntarily. Indeed, USCIS complied with the requirements of the Older Workers' Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f), by advising Al'Zaiem to consult with an attorney before signing, giving him 21 days to

review the Agreement, and allowing him to revoke it for a full week after signing.  See

Abeyance Agmt. at 3.  Those procedures more than ensured that Plaintiff had the opportunity to

fully consider the Agreement.

 Al'Zaiem instead points to perceived ambiguities in the text concerning his removal, but

not his demotion, waiver that made his release of such claims unknowing.  See Opp. at 9–10.

While the waiver relating to his demotion gives up "any and all" claims, such language is absent

from the waiver relating to Plaintiff's removal.  More specifically, he waived "any and all appeal

and other review rights over his voluntary reassignment/demotion," including "any and all . . .

judicial recourse normally available to the Employee in response to disciplinary action by the

Agency."  Abeyance Agmt. at 1–2.  Al'Zaiem argues that without the "any and all" specification,

however, the removal waiver is significantly narrower than its demotion counterpart.  See Opp.

at 10.  But the Court need look no further than the text surrounding the removal waiver to dispel

that idea.  In the very sentence containing that waiver, the Agreement provides that "further

unacceptable performance or misconduct," as determined by the Agency "in its sole and

exclusive discretion," would result in removal.  See Abeyance Agmt. at 2 (emphasis added).

Under that provision, USCIS had nearly unfettered control in determining whether Al'Zaiem

violated the Agreement.

 With that context in mind, the waiver of Al'Zaiem's "right to appeal the removal in any

forum, including but not limited to grievance, arbitration, administrative, and judicial"

unambiguously included any claim that his removal was discriminatory.  That is the case, with

one prominent exception discussed shortly, even though the Agreement did not list any statutes

by name.  Such itemization was not necessary to put Plaintiff on notice of the otherwise obvious

breadth of this waiver.  See Snowden, 506 F. Supp. 3d at 31 ("Given the breadth of this waiver,

the fact that the [agreement] does not reference Title VII claims <u>in particular</u> is of no moment . . . .").  In short, waivers of "any and all" claims are but one type of unambiguous waiver; the one at issue here is simply another type.

One exception deserves the Court's treatment although the parties do not raise it.  To effect an enforceable waiver of ADEA claims, the contract must, among other things, "specifically refer[] to rights or claims arising under" the ADEA.  <u>See</u> 29 U.S.C. § 626(f)(1)(B).  Although the Abeyance Agreement referred to the OWBPA, it never specifically referenced ADEA claims, which is enough on its own to nullify the waiver as to those claims.  <u>See</u> <u>Oubre v. Entergy Ops., Inc.</u>, 522 U.S. 422, 424–425, 427 (1998) (finding agreement to waive "any and all claims" was insufficiently specific because it "made no specific reference to claims under the ADEA" within meaning of OWBPA); <u>Johnson v. Veneman</u>, 569 F. Supp. 2d 148, 157 (D.D.C. 2008) ("[T]he OWBPA . . . requires any waiver of ADEA-covered claims to specifically reference the ADEA.").  Unlike his Title VII claims, Al'Zaiem's age-discrimination claims related to his removal — though not to his demotion, which he has conceded — thus survive his waiver.

### 2. *Hostile Work Environment and Failure to Accommodate*

Just as the Agreement leaves no room for debate about whether it covers demotion and removal claims, its specificity in naming those particular causes of action makes clear that Al'Zaiem's others may proceed.  The waivers are limited on their face to claims involving two particular adverse actions, and the Agreement nowhere references hostile-work-environment or failure-to-accommodate claims; nor does it include a broad catch-all waiver.  <u>See</u> Abeyance Agmt. at 1–2.  As Al'Zaiem points out, his EEO complaint raising a hostile work environment and accommodation issue was under investigation when he entered the Agreement.  <u>See</u> Am.

Compl., ¶¶ 11–12, 53.  That the agency investigated such claims for months after signing the Agreement suggests that it did not understand the contract to limit his claims beyond demotion and removal.  See Report of Investigation at 3.  Because the waivers specified their applicability to just those two varieties of adverse action, that was a more than reasonable interpretation of the Agreement.

DHS's observation that aspects of Al'Zaiem's hostile-work-environment claim are "inextricably intertwined with the subsequent removal decision," ECF No. 20 (Reply) at 4, nonetheless bears consideration.  For instance, Plaintiff appears to allege that his placement on an unwarranted PIP in and of itself subjected him to a hostile work environment.  See Am. Compl., ¶¶ 42–44.  Defendant responds that by signing the Abeyance Agreement, he admitted that the PIP was warranted, bringing it within the ambit of the waiver.  See Reply at 4.  This framing has some intuitive appeal but it elides the entirely different natures of the adverse actions in question.  Although the PIP was an integral step on the way to removal, Al'Zaiem's hostile-work-environment claim does not challenge the effect of the PIP on his standing at USCIS, but rather the effect such scrutiny had on his day-to-day experience there.  The agency might well be able to make a persuasive argument that, given Al'Zaiem's acknowledgement of inadequate performance in the Agreement, see Abeyance Agmt. at 1, his claim that the increased scrutiny of his performance was motivated by nondiscriminatory performance reasons does not withstand examination.  But that argument goes to the merits rather than a formal waiver of claims.  Because Defendant makes no argument on the merits at this stage, the Court will not address that defensive approach any further.

The parties' Abeyance Agreement includes waivers that, like fjords, run deep but narrow. When it comes to demotion and removal, Al'Zaiem's waiver is all encompassing.  Still, he may

proceed with his ADEA claims and his claims predicated on different adverse actions, provided that he properly exhausted them.

B.  Exhaustion

It is axiomatic that federal employees may file a Title VII or ADEA action in federal court only after exhausting their administrative remedies.  See Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (affirming dismissal of Title VII retaliation claim for failure to exhaust); 42 U.S.C. § 2000e–16(c) (Title VII exhaustion requirements); 29 U.S.C. § 633a(b)–(d) (ADEA exhaustion requirements).  These administrative-exhaustion requirements are not jurisdictional for Title VII claims, and a court must therefore dismiss an unexhausted Title VII claim under Rule 12(b)(6).  Artis v. Bernanke, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011); see also Niskey v. Kelly, 859 F.3d 1, 5 (D.C. Cir. 2017).  Likewise, "[t]he Rehabilitation Act requires individuals to exhaust administrative remedies before they can file suit to enforce the Act's protections."  Doak v. Johnson, 798 F.3d 1096, 1099 (D.C. Cir. 2015) (citing 29 U.S.C. § 794a(a)(1)).  Failure to exhaust Rehabilitation Act claims, however, often deprives the Court of jurisdiction.  Id. at 1103–04.  Defendant asserts that Plaintiff did not uniformly exhaust his claims.  See MTD at 11–15. As the parties agree on many of the exhaustion questions, the Court will first narrow down which issues require judicial resolution.

1.  *Concessions and the ADEA*

DHS makes two important concessions.  It acknowledges that Al'Zaiem properly exhausted a 2019 failure-to-accommodate claim.  See id. at 14 n.3.  Likewise, it offers no argument that his hostile-work-environment claims accruing from February 2019 onward are unexhausted.  See id. at 11–15.  Al'Zaiem, for his part, renounces any religious-accommodation claim.  See Opp. at 11.  He also surrenders his hostile-environment claims stemming from

11

alleged mistreatment that took place prior to February 21, 2019 — that is, the claims he raised in an informal EEO complaint process but for which he never filed a formal complaint.  Id. at 10–11.  And, although he concedes this point in a more implicit fashion, Al'Zaiem does not argue that he exhausted any failure-to-accommodate claim that arose in 2018.  He asserts that he has live failure-to-accommodate claims extending beyond his 2019 denial of accommodation because he included additional claims in an amended EEOC complaint that he attempted to file in December 2020.  Id. at 13.  That amended EEOC complaint, however, which the Court will turn to shortly, made no mention of any 2018 accommodation issues.  See ECF No. 19-3 (Motion to Amend) at 4–5 (referencing only 2020 claims).  Plaintiff's sole argument on this point thus acknowledges that any such 2018 claim was not exhausted.  After this crossing-out exercise, what remains for the Court's review on the exhaustion front are just two claims: those brought under the ADEA and Al'Zaiem's 2020 accommodation claim.

The Court can quickly disabuse Defendant of its notion that Plaintiff failed to exhaust his ADEA claim, which disregards a perfectly viable route to exhaustion.  Defendant observes that Al'Zaiem filed his ADEA claim in federal court more than 180 days after his employment at USCIS ended.  See MTD at 14–15.  It is true that employees may file ADEA claims directly in federal court without undertaking any administrative review within 180 days of experiencing an adverse action, provided that certain other requirements are met.  See 29 U.S.C. § 633a(d).  But an employee may also exhaust ADEA claims by "invok[ing] the EEOC's administrative process, and then su[ing] if dissatisfied with the results."  Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir. 2003).  DHS never maintains that Al'Zaiem failed to raise his age-discrimination claims in the administrative proceedings.  Its initial administrative decision shows that, in fact, he did raise them from the outset.  See Report of Investigation at 2 (listing age as alleged basis of

discrimination).  And the EEOC decision shows that he raised them again at the next stage of

administrative review.  See ECF No. 16 (MTD), Exh. 9 (EEOC Decision) at 1.  Al'Zaiem's age-

discrimination claims, therefore, did not age out of viability.

        2.  *Failure to Accommodate*

The more complicated exhaustion question centers on Al'Zaiem's requests for a reduced

workload he made in 2020 after sustaining an injury to his arm.  See Motion to Amend at 4–5.

Plaintiff could not include that issue in his original EEO complaint as it had not yet arisen.  See

Am. Compl., ¶ 10.  When his requests for accommodation were denied in May 2020, he sought a

way to add new Rehabilitation Act claims, among others, to his ongoing EEOC proceedings.

Ultimately, Al'Zaiem sidestepped the administrative process in the agency and moved for leave

to amend directly with the EEOC on December 30, 2020.  See Motion to Amend.  The EEOC

denied his motion — which included several additional claims — albeit without explanation as

to his 2020 accommodation claim.  See EEOC Case Management Order at 3.  Notably, Al'Zaiem

never submitted a new EEO complaint containing these allegations to the agency.

As Al'Zaiem himself points out, "For claims against federal agencies, exhaustion requires

submitting a claim to the employing agency itself."  Opp. at 14 (quoting Doak, 798 F.3d at 1099)

(internal quotation marks omitted).  Plaintiff, of course, failed to do just that.  The threshold

inquiry is whether that misstep falls into the jurisdictional bucket of Rehabilitation Act

exhaustion defects or the non-jurisdictional bucket.  If Al'Zaiem's failure to exhaust was of the

jurisdictional variety, the Court has no business entertaining his arguments under equitable

exceptions to exhaustion such as waiver.  See Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir.

2006) ("[J]urisdictional exhaustion . . . may not be excused.") (internal quotation marks and

citation omitted).

The line demarcating the two is not entirely bright, given that an employee's "wholesale failure to file an administrative complaint or to obtain any administrative decision at all" creates a jurisdictional barrier to reviewing Rehabilitation Act claims, while "issues concerning how a claimant participates in that administrative process, both procedurally and substantively, are not of jurisdictional moment." Doak, 798 F.3d at 1103–04. Put in slightly more general terms, jurisdictional exhaustion requirements are those "required by statute" whereas non-jurisdictional requirements subject to equitable exceptions are those "non-statutory step[s] preceding the formal agency exhaustion." Id. at 1104; Williams v. Brennan, 320 F. Supp. 3d 122, 128 (D.D.C. 2018) ("[T]he Doak decision distinguished between statutory and administrative exhaustion requirements.").

With this framework in mind, Al'Zaiem's insistence that the Court has jurisdiction over his 2020 accommodation claim because he "filed an amended complaint with the EEOC" falls flat. See Opp. at 13. He might be correct that his attempted amendment removes him from the company of employees who achieved a "wholesale failure to file an administrative complaint." Doak, 798 F.3d at 1103. But he ignores Doak's additional teaching that statutory exhaustion requirements enjoy jurisdictional status. Al'Zaiem does not contend that the requirement to file an initial complaint with the employing agency finds its source in regulation rather than statute, nor could he. The Rehabilitation Act incorporates by reference the portion of Title VII instituting that requirement. See 29 U.S.C. § 794a(a)(1) (adopting "[t]he remedies, procedures, and rights set forth in . . . 42 U.S.C. 2000e-16"); 42 U.S.C. § 2000e-16(c) (conditioning right to bring suit on existence of a "final action taken by a department, agency, or unit . . . or by the [EEOC] upon an appeal from a decision or order of such department, agency, or unit") (emphasis added); Doak, 798 F.3d at 1099 (tracing Rehabilitation Act's initial charge-filing rule to statute; Barkley

v. U.S. Marshals Serv. ex rel. Hylton, 766 F.3d 25, 34 (D.C. Cir. 2014) ("The obligation to

initiate one's claim in the government agency charged with discrimination is 'part and parcel of

the congressional design . . . .'") (emphasis added) (quoting Kizas v. Webster, 707 F.2d 524, 543–

44 (D.C. Cir. 1983)).  The undeniable statutory origin of the exhaustion requirement Al'Zaiem

transgressed leaves the Court without jurisdiction to consider the equitable arguments central to

his Opposition.  See McIver v. Mattis, 318 F. Supp. 3d 245, 250–51 (D.D.C. 2018) (finding

jurisdictional bar "when the plaintiff filed a charge with the appropriate agency but did not

provide notice of the particular claim later pursued in court").

        Al'Zaiem ventures, in the alternative, that exhausting the agency's EEO process is beside

the point because the EEOC allows a complainant to bypass initial agency review by adding

claims "like or related to" the original EEOC complaint.  See Opp. at 14 (quoting 19 C.F.R. §

1614.106(d)).  To start, it is not settled in this Circuit whether that exception to exhaustion

remains viable after Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which held that

"discrete discriminatory acts are not actionable if time barred, even when they are related to acts

alleged in timely filed charges."  Id. at 113; see Rashad v. Wash. Metro. Area Transit Auth., 945

F. Supp. 2d 152, 166 (D.D.C. 2013) (explaining that after Morgan, "[m]ost judges in this district

have held that plaintiffs alleging discrete acts of discrimination or retaliation must exhaust the

administrative process regardless of any relationship that may exist between those discrete

claims and any others.") (internal quotation marks omitted); Haynes v. D.C. Water & Sewer

Auth., 924 F.3d 519, 526 n.1 (D.C. Cir. 2019) (declining to resolve the question).  Even assuming

that Morgan poses no obstacle to Al'Zaiem's argument, his claims do not meet the requisite

standard of relatedness.

A claim is reasonably related to an employee's original allegations if it "arise[s] from the administrative investigation that can reasonably be expected to follow the charge of discrimination," Payne, 619 F.3d at 65 (internal quotations omitted) (quoting Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)), or, in other words, if it "grow[s] out of" the original allegations. Park, 71 F.3d at 907. Al'Zaiem's 2020 accommodation claim bears little relation to his 2019 claim. Most notably, they involved entirely different medical conditions — chronic hand pain and ADD/ADHD in 2019 versus an arm injury in 2020. They also involved distinct accommodation requests — varied work assignments and breaks in 2019 versus a reduced workload in 2020. See Am. Compl., ¶¶ 25, 28 (2019 allegations); Motion to Amend at 4–5 (2020 allegations). The only commonality between the claims is that they both derive from denied accommodation requests. That is not the stuff of a reasonably close factual relationship. See Carroll v. England, 321 F. Supp. 2d 58, 65–66 (D.D.C. 2004) (holding no reasonable relation between failure to accommodate migraines with flexible work schedule and failure to accommodate back pain with ergonomic chair); Jones v. Univ. of D.C., 505 F. Supp. 2d 78, 85 (D.D.C. 2007) (holding court lacked jurisdiction over ongoing ADA failure-to-accommodate claims because EEOC complaint alleged only two discrete denials of accommodation).

Finally, even if the exhaustion issues here were non-jurisdictional, Al'Zaiem falls far short of qualifying for an equitable exception. First, he never actually obtained an administrative ruling on the merits of his 2020 failure-to-accommodate claim, so, unlike in Doak, the agency did not waive its exhaustion defense by treating the claim as exhausted. Cf. 798 F.3d at 1104 (agency decided unexhausted claim on merits without ever mentioning failure to exhaust).

Second, the administrative record does not bear out the need for equitable relief on the basis of misrepresentations by the EEOC. When his new claims first arose, Al'Zaiem contacted

16

an EEOC clerk, Carolyn Allen, and the assigned EEOC mediator, Samuel Mancilla, for assistance in adding them to his complaint.  See ECF No. 19-6 (Motion to Reconsider) at 9, 21 (email correspondence).  Allen directed him to send any additional retaliation complaints to her, id. at 9, and later confirmed receipt of that complaint.  Id. at 23.  Meanwhile, Mancilla informed Al'Zaiem that he could only help with issues related to mediation and thus directed him "to speak with [his] EEO Office about how to proceed."  Id. at 21.  In response to a second inquiry, Mancilla wrote, "[T]his case in no longer assigned to me . . . . The corresponding [administrative judge] will be in contact, once assigned."  Id.  After an unexplained six-month gap in his communication with EEOC, Al'Zaiem again requested information about amending his complaint from the EEOC, this time from an Administrative Judge who responded, "You may request the Administrative Judge amend your complaint to add a claim of retaliation."  Id. at 27.

The EEOC did not mislead Al'Zaiem in relation to his 2020 accommodation claim at any point during these communications.  His correspondence with Allen and the Administrative Judge were limited to retaliation claims.  Nor was the information that he could file for leave to amend his complaint with the EEOC incorrect.  See 29 C.F.R. § 1614.106(d) ("A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint.").  Even if, in a vacuum, that direction might have been incomplete and therefore confusing, Mancilla's prior instruction to contact the Agency's EEO office was a strong corrective to that confusion.  The EEOC's communications do not rise to the level of blatant misrepresentation typical of cases applying an equitable exception in this context.  Cf. Albano v. Shering-Plough Corp., 912 F.2d 384, 386 (9th Cir. 1990) (finding EEOC at fault for employee's failure to exhaust where EEOC "assured [him] that his original charge for failure to promote encompassed" the unexhausted claim); Steffen v. Meridian Life Ins.

<u>Co.</u>, 859 F.2d 534, 544 (7th Cir. 1988) (excusing failure to exhaust because "the EEOC informed Steffen that it would be treating the Intake Questionnaire as a charge but then failed to treat it as a charge").

**IV.     Conclusion**

For these reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  <u>August 4, 2023</u>